ELECTRONICALLY FILED
01/02/2024
U.S. DISTRICT COURT
Northern District of WV

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | | |
|---|---|---|
| DARRYL BEANS, | : | Case No.: **3:24-CV-1** |
| Plaintiff, | : | |
| v. | : | Judge **Groh** |
| FIRST HOME MORTGAGE CORPORATION, *et al.,* | : | |
| Defendants. | : | |

## NOTICE OF REMOVAL

Defendant, RoundPoint Mortgage Servicing LLC f/k/a RoundPoint Mortgage Servicing Corporation ("RoundPoint"), hereby removes the above-captioned action to the United States District Court for the Northern District of West Virginia. Removal is based on 28 U.S.C. § 1332(a) (diversity jurisdiction) and is authorized by 28 U.S.C. §1441 (authorization of removal) and 1446 (procedure for removal). As grounds for removal, RoundPoint states as follows:

**I.      SUMMARY OF ALLEGATIONS IN THE COMPLAINT**

1. On or about March 23, 2023, Plaintiff, Darryl Beans ("Plaintiff"), commenced an action in the Circuit County of Jefferson County, West Virginia (the "Action") by filing a Complaint whereby he asserted a series of claims against RoundPoint, First Home Mortgage Corporation ("First Home"), First Guaranty Mortgage Corporation ("First Guaranty"), and Rushmore Loan Management Services, LLC ("Rushmore"). A true and correct copy of the Complaint is attached hereto as **Exhibit A**.

2. In the Complaint, Plaintiff asserted a series of allegations arising out of the loan that he received from First Home on February 19, 2016 in the amount of $118,131 (the "Loan"),

the Deed of Trust securing the Loan (the "Deed of Trust"), and the real property located at 1398 Rolling Lane, Harpers Ferry, WV 25425 (the "Property"). *See* Ex. A at ¶14.

3. Plaintiff alleged that the Property is comprised of two separate parcels: 1) Lot 11, Section 1-J ("Lot 11") and 2) Lots 1 and 2, Section 3-J ("Lots 1 and 2"). *Id*. at ¶16.

4. Plaintiff alleged that when both RoundPoint and Rushmore serviced the Loan, they failed to utilize funds from the Loan's escrow account to pay the taxes owed in connection with Lot 11 despite the fact that the amounts they collected from Plaintiff on a monthly basis were based in part upon the tax obligations owed in connection with both parcels. *Id*. at ¶¶22-24.

5. Plaintiff alleged that Erlin Delatorre ("Delatorre") purchased a tax lien that was secured against Lot 11 in November 2017 and that Delatorre subsequently received a deed to Lot 11 (the "Tax Sale"). *Id*. at ¶¶28, 34.

6. Plaintiff alleged that he "felt extreme anxiety and stress" as a result of the Tax Sale and that he subsequently contacted Delatorre in order to negotiate a resolution whereby he paid $3,000 to repurchase Lot 11. *Id*. at ¶¶36, 38.

7. Plaintiff alleged that when he attempted to refinance the Loan in 2021, he was required to provide a letter of explanation regarding the Tax Sale and explained that the Property had been sold as a result of his servicer's failure to pay property taxes. *Id*. at ¶43.

8. Plaintiff further alleged that his loan application was denied and that the principal reason for the denial was "garnishment, attachment, foreclosure, repossession, or collection action or judgment." *Id*. at ¶44.

9. Plaintiff asserted four different claims against each of the defendants: 1) a series of violations of the West Virginia Consumer Credit and Protection Act ("WVCCPA"); 2) unjust

141581.00719/133962835v.1

enrichment; 3) breach of contract; and 4) gross negligence/breach of fiduciary duty. *Id*. at ¶¶46-72.

10. In Count I, Plaintiff alleged that the defendants violated W. Va. Code §46-2-127(d) "each and every time" they charged and collected escrow amounts from him for the taxes owed on Lot 11 because the defendants claim that they never knew that Plaintiff owned Lot 11 and never disbursed tax payments to the Jefferson County Tax Collector for the amounts owed on this lot. *Id*. at ¶47.

11. In addition, Plaintiff alleged that the defendants violated W. Va. Code §46-2-127(c) each time that they collected escrow payments for property taxes following the Tax Sale without notifying him that the property taxes were "due to the Erline Delatorre." *Id*. at ¶48.

12. Plaintiff further alleged that the defendants violated W. Va. Code §46-2-127(h) by continuing to collect property taxes for Lot 11 with no intention of disbursing those amounts. *Id*. at ¶49.

13. Finally, Plaintiff alleged that the defendants violated W. Va. Code §46-2-128 by collecting escrow amounts from him with respect to the taxes owed on Lot 11 and failing to disburse them. *Id*. at ¶50.

14. In Count II, Plaintiff alleged that the defendants unjustly extracted monetary payments from him beginning on the date the Loan was originated and that it would be inequitable for the defendants to retain his escrow payments or any of the fees earned as a result of collecting those fees. *Id*. at ¶¶52-58.

15. In Count III, Plaintiff alleged that the defendants breached the terms of the Deed of Trust by collecting escrow amounts from him on a monthly basis and not disbursing them in accordance with the terms of the Deed of Trust. *Id*. at ¶¶59-64.

16. In Count IV, Plaintiff alleged that the defendants committed gross negligence, breached a fiduciary duty that they owed to him, and caused him to "suffer the loss of their home, damage to his credit, humiliation, annoyance, inconvenience, anxiety, impairment of the capacity to enjoy life, mental anguish, and personal embarrassment and other damages as will be proven at trial." *Id*. at ¶71.

17. In addition, Plaintiff alleged that he was entitled to recover punitive damages because the defendants' actions and inactions demonstrated evidence of gross fraud, malice, oppression, or wanton, willful or reckless conduct or criminal indifference to its civil obligations to him. *Id*. at ¶72.

18. In the prayer for relief section of the Complaint, Plaintiff sought to recover:

   a. Statutory damages;

   b. Compensatory damages associated with his out-of-pocket expenses;

   c. Damages associated with the embarrassment, inconvenience, loss of economic opportunity, loss of incidental time, frustration, emotional distress, and aggravation that he sustained;

   d. Credit related damages;

   e. Property equity losses;

   f. Credit denials;

   g. Actual and statutory damages under the WVCCPA;

   h. Punitive damages, attorney fees, costs incurred, and court costs; and

   i. Other assessments proper by law and any and all other applicable federal and state laws.

*Id*. at p. 12.

141581.00719/133962835v.1

19. In addition, Plaintiff requested an award of post-judgment interest. *Id*.

## II. ROUNDPOINT'S PRIOR REMOVAL, PLAINTIFF'S MOTION TO REMAND, AND PLAINTIFF'S SUBSEQUENT DISCOVERY RESPONSES

### A. RoundPoint's Prior Notice of Removal and Plaintiff's Motion to Remand

20. On April 27, 2023, RoundPoint filed a Notice of Removal with this Court whereby it removed the Action on the grounds that this Court possessed diversity jurisdiction under 28 U.S.C. §1332(a) because the suit is between citizens of different states and the amount in controversy is more than $75,000 (the "Prior Removal Action").

21. This Court assigned Docket Number 3:23-cv-109-GMG-RWT to the Prior Removal Action. A copy of the docket sheet for the Prior Removal Action is attached hereto as **Exhibit B**.

22. On May 30, 2023, Plaintiff filed a Motion for Remand and Attorney Fees whereby he requested that this Court remand the Action to the Circuit Court of Jefferson County because RoundPoint could not show that the amount in controversy of $75,000 had been met (the "Motion to Remand"). A copy of the Motion to Remand is attached hereto as **Exhibit C**.

23. In analyzing the relief that he was seeking, Plaintiff alleged that he simply demanded $3,000 in actual damages for his repurchase of Lot 11 and stated that, although he also requested noneconomic damages and statutory damages, "$3,000 is a far cry from $75,000." *See* Ex. C at p. 5.

24. Plaintiff further alleged that "there is no objectively reasonable basis to summarily claim that the value exceeds $75,000." *Id*.

25. Throughout the remainder of the Motion to Remand, Plaintiff alleged that RoundPoint could not demonstrate that the amount in controversy had been met because the noneconomic damages, statutory damages, punitive damages, and attorneys' fees that he was

seeking were too speculative to quantify and could not be included in calculating the jurisdictional amount. *Id*. at p. 5-10.

26. After RoundPoint filed an opposition to the Motion to Remand, Plaintiff filed a reply brief on June 22, 2023 (the "Reply"). A copy of the Reply is attached hereto as **Exhibit D**.

27. Only after Plaintiff was forced to concede that he was seeking to recover a substantial amount of statutory damages pursuant to the WVCCPA did he attempt to quantify this amount and include it in his calculation of the amount in controversy. *See* Ex. D at p. 2-3.

28. With that said, Plaintiff contended that the maximum amount of statutory damages that he may recover from RoundPoint was $25,000. *Id*.

29. On November 17, 2023, The Honorable Gina M. Groh issued an Order granting the Motion to Remand and remanding the Action to state court (the "Order"). A copy of the Order is attached hereto as **Exhibit E**.

30. In the Order, this Court noted that Plaintiff did not make a demand for damages in a specific amount and noted that there was no question that Plaintiff was seeking at least $25,000 in statutory damages because he alleged that at least 25 different violations of the WVCCPA occurred. *See* Ex. E at p. 3-4.

31. This Court then found that the summary that Plaintiff provided in the Reply regarding his plausible damages was "accurate and realistic." *Id*. at p. 4.

32. This Court ultimately held that RoundPoint had not met its burden of establishing that the amount in controversy exceeded $75,000 through tangible evidence or competent proof by a preponderance of the evidence. *Id*. at p. 5.

### B. **Plaintiff Serves Discovery Responses and Conveys a Settlement Offer That Paint a Much Different Picture Regarding the Amounts That He is Seeking to Recover From RoundPoint.**

33. On December 1, 2023, Plaintiff provided responses to RoundPoint's First Set of Interrogatories (the "Discovery Responses"). A copy of the Discovery Responses is attached hereto as **Exhibit F**.

34. In response to Interrogatory Number 11, Plaintiff alleged that RoundPoint committed at least 45 different violations of the WVCCPA because it sent 42 different monthly billing statements that sought to recover tax payments owed in connection with Lot 11, sent an escrow analysis statement in March 2017 implying that it intended to remit property tax payments for Lot 11, and made additional misrepresentations during a telephone call with Plaintiff and a written response to Plaintiff's attorney in March 2022. *See* Ex. F at p. 7-8.

35. In response to Interrogatory Number 17, Plaintiff stated that he was also seeking to recover economic damages in the amount of $3,437.30, compensation for damage to his credit opportunities in an amount that required calculation by an expert, punitive damages, and noneconomic damages for the "emotional distress, annoyance, and inconvenience" that he sustained. *Id*. at p. 9-10.

36. Plaintiff also reiterated that he was seeking statutory damages of $1,000 per WVCCPA violation and stated that he "has identified **at least** 45 separate violations." *Id*. at p. 10 (emphasis added).

37. In support of his claim for noneconomic damages, Plaintiff alleged that the Tax Sale caused him to experience "increasing anxiety that manifested in ways including a short temper and trouble sleeping" and disclosed that he participated in marriage counseling and sought medical treatment for anxiety and depression. *Id*. at p. 10.

38. In addition, during a telephone conversation that the undersigned counsel had with Plaintiff's counsel, Plaintiff's counsel made a settlement demand of $100,000. Plaintiff conveyed this offer to RoundPoint after he had already entered into a settlement agreement with Rushmore and First Home.[1]

39. Importantly, in July 2023, Plaintiff's counsel conveyed a settlement offer to RoundPoint's counsel that was less than $75,000.

40. Moreover, during a subsequent conversation that occurred after Plaintiff served the Discovery Responses, Plaintiff's counsel stated that he had incurred a significant amount of attorneys' fees and costs to date, that he expected to incur an additional $50,000-75,000 in attorneys' fees through trial, that his hourly rate was $650, and that at least one West Virginia court previously granted a motion for attorneys' fees that he filed whereby he sought to recover attorneys' fees that were incurred at an hourly rate of $650.

### III.  THE STATUTORY REQUIREMENTS FOR REMOVAL UNDER DIVERSITY JURSIDICTION ARE MET.

41. This Court has diversity jurisdiction under 28 U.S.C. §1332(a) over this matter because the suit is between citizens of different states and the amount in controversy is more than $75,000.

### A. Complete Diversity of Citizenship

42. Plaintiff is a resident of West Virginia. Ex. A at ¶1.

43. RoundPoint is a Delaware limited liability company that is wholly owned by its lone member, Matrix Financial Services Corporation ("Matrix").

---

[1] Plaintiff previously dismissed his claims against First Guaranty, and it filed a Partial Final Dismissal Order with the Jefferson County Circuit Court on December 6, 2023 that sought to dismiss his claims against First Home and Rushmore with prejudice. As a result, RoundPoint is the lone remaining defendant that Plaintiff is seeking relief from.

44. Matrix is an Arizona corporation with a principal place of business in Minnesota.

45. Therefore, for the purposes of diversity jurisdiction, RoundPoint is a citizen of Arizona and Minnesota.

46. Consequently, there is complete diversity of citizenship between the parties.

### B. Amount in Controversy

47. This case meets the jurisdictional requirement of more than $75,000 in controversy because Plaintiff, seeks: (i) actual and compensatory damages for the alleged violations of the WVCCPA as authorized by W. Va. Code § 46A-5-101(1); (ii) statutory damages for all alleged violations of the WVCCPA that occurred as authorized by W. Va. Code § 46A-5-101(1); (iii) compensatory damages associated with Plaintiff's out-of-pocket expenses; (iv) emotional distress damages; (v) credit related damages; (vi) property equity losses; (vii) punitive damages; and (viii) attorneys' fees, litigation expenses, and costs for the prosecution of this action (all of which are potentially recoverable under the WVCCPA). *See* Ex. A, Demand for Relief.

48. Here, Plaintiff artfully attempted to avoid explicitly pleading the specific amounts of monetary damages and non-monetary damages that he has allegedly sustained.

49. However, in the Discovery Responses, Plaintiff stated that he was seeking to recover <u>at least</u> $45,000 in statutory damages $3,437.30 in economic damages as well as unspecified amounts of credit repair damages, punitive damages, and noneconomic damages.

50. In addition, Plaintiff's counsel has conveyed a settlement offer of $100,000 to RoundPoint's counsel.

51. As a result and based on the information provided in the Discovery Responses, the amount in controversy exceeds the $75,000 jurisdictional requirement.

52. Therefore, subject matter jurisdiction exists in this Court.

**1. Legal Standard for Determining Amount in Controversy**

53. Courts within the Fourth Circuit apply the "either party" test for calculating whether the jurisdictional amount is met for purposes of diversity jurisdiction. *Dixon v. Edwards*, 290 F.3d 699, 710 (4th Cir. 2002) ("In this circuit, it is settled that the test for determining the amount in controversy in a diversity proceeding is 'the pecuniary result to either party which [a] judgment would produce.'") quoting *Gov't Employees Ins. Co. v. Lally*, 327 F.2d 568, 569 (4th Cir. 1964).

54. "The amount in controversy is determined on the basis of the record existing at the time the petition for removal is filed." *Landmark Corp. v. Apogee Coal Co.*, 945 F.Supp. 932, 936 (S.D. W. Va. 1996).

55. To establish the amount in controversy in a notice of removal, "a defendant's notice of removal **need include only a plausible allegation** that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens,* 574 U.S. 81, 89 (2014) (emphasis added).

56. A "short and plain statement" of the alleged amount in controversy, such as those statements required of pleadings under Fed. R. Civ. P. 8(a), is sufficient. *Id.* at 87; *see also, Ellenburg v. Spartan Motors Chassis. Inc.*, 519 F.3d 192, 200 (4th Cir. 2008) (holding that a defendant is not required "to meet a higher pleading standard than the one imposed on a plaintiff in drafting an initial complaint.").

57. In addition, attorney fees and costs may be included in an amount in controversy calculation where a state statute (such as the WVCCPA) mandates or allows payment of attorney fees. *See Maxwell v. Wells Fargo Bank, N.A.*, Civ. No. 2:09-0500, 2009 WL 3293871 at *4 (S.D. W. Va. October 9, 2009) (*citing Mo. State Life Ins. Co. v. Jones*, 290 U.S. 199, 202 (1933)); *see*

*also Francis v. Allstate Ins. Co.*, 869 F. Supp .2d 663 (D. Md. 2012) *aff'd*, 709 F.3d 362, 368 (4th Cir. 2013).

58. Moreover, no evidentiary submission is required to support a notice of removal. A defendant's amount in controversy allegation(s) "should be accepted" for purposes of conferring jurisdiction on the federal court unless it is "contested by the plaintiff or questioned by the court." *Dart*, 574 U.S. at 87; *see also id.* at 88-89 (holding that: "Defendants do not need to prove to a legal certainty that the amount in controversy requirement has been met. Rather, defendants may simply allege or assert that the jurisdictional threshold has been met").

59. When a complaint seeks a non-specific amount of damages, the court applies a preponderance of the evidence standard in determining whether the amount in controversy requirement has been met. *See Maxwell* 2009 WL 3293871 at *2 (*citing Sayre v. Potts*, 32 F.Supp.2d 281, 885 (S.D. W.Va. 1999) (other internal citations omitted)).

60. Importantly, in *Maxwell*—a similar case with non-specific allegations of consumer law violations and damages for emotional distress where the "total amount sought by a plaintiff [was]…not specified in the complaint"—the court held as follows:

> …the jurisdictional minimum is satisfied in as much as a jury could, if plaintiff fully prevails, properly award (1) $52,800 in WVCCPA civil penalties; (2) $9,000 in actual damages…; (3) $8,000 in compensatory damages for emotional distress, annoyance, and humiliation; and (4) [a conservative amount of at least] $10,000[2] in attorneys' fees, aggregating $79,800.

2009 WL 3293871 at *1, *5 (denying motion to remand).

61. In addition, where "emotional damages" are recoverable under state law, those the damages may be included for purposes of determining the amount in controversy necessary for

---

[2] Specifically, the Court characterized this fee estimate as a "distinctively conservative estimate…" *Id.* at *4

11

diversity jurisdiction. *See, e.g. Bragg v. Harco Distributors, Inc.*, 2014 WL 509524 at *3 (D. Md. Feb. 6, 2014) (*citing Exxon Mobil Corp. v. Albright*, 433 Md. 303, 350 (2013)).

62. Under West Virginia law, emotional damages are recoverable for tortious conduct. *See, e.g., Marlin v. Bill Rich Const., Inc.,* 482 S.E.2d 620, 637 (W. Va. 1996) (holding that an individual may recover emotional damages stemming from negligent conduct); *Simms v. U.S.,* 2014 WL 7212608 at *3 (S.D. W. Va. Dec. 17, 2014).

63. Thus, emotional damages—such as those included in Plaintiff's Complaint—can be included in the amount in controversy calculation for purposes of diversity jurisdiction.

64. In addition, where tortious conduct is pleaded, punitive damages are recoverable, and a plaintiff's "claim for punitive damages must be added to their claim for compensatory damages in determining subject matter jurisdiction." *Weddington v. Ford Motor Credit Co.*, 59 F.Supp.2d 578, 584 (S.D. W. Va. 1999) (denying motion to remand and holding that if punitive damages were awarded, "it is easy for the Court to fathom that the amount recovered could very well surpass the $75,000 jurisdictional requirement"); *see also Stoler v. PennyMac Loan Services, LLC*, 2018 WL 6422469, at *3 (S.D. W. Va. Dec. 6, 2018) (denying plaintiff's motion to remand and including $62,500 in punitive damages in its calculation of the amount in controversy as a result of plaintiff's request for compensatory damages of $25,000).

65. "In West Virginia, punitive damages may be awarded in amounts up to $500,000 or four (4) times compensatory damages, whichever is greater. *Jersey Subs Inc. v. Sodexo America, LLC*, 2019 WL 208882, at *3 (N.D. W. Va. Jan. 15, 2019) (finding that the amount in controversy had been established and denying the plaintiff's motion to remand).

66. Because West Virginia law permits the recovery of punitive damages in connection with a gross negligence claim, a plaintiff's request for punitive damages in connection with a gross

negligence claim should be included as part of the amount in controversy. *Matthews v. H.J. Meyers & Co., Inc.*, 1997 WL 529052, at *1 (N.D. W. Va. 1997).

67. Moreover, when a plaintiff alleges that the defendant owed a fiduciary duty to him or her and profited while acting in its fiduciary duty, punitive damages "must also be considered to be in controversy." *Id*.

68. In addition, "[a]s part of a court's common sense evaluation of the amount in controversy, a court may look to settlement demands made by the plaintiff." *Kenney v. Independent Order of Foresters*, 2012 WL 6149171, at *4 (N.D. W. Va. Dec. 11, 2012) (Groh, J.) (denying the plaintiff's motion to remand, holding that the amount in controversy had been met, and finding that the plaintiff's settlement demand of $100,000 appeared to be her own reasonable assessment of the value of her claims); *see also Riggleman v. Valley Health Urgent Care*, 2019 WL 10056968, at *3 (N.D. W. Va. Sept. 5, 2019) (denying plaintiff's motion to remand and holding that the plaintiff's settlement demand of $150,000 in damages plus attorneys' fees could be used as proof that the amount in controversy was over $75,000); *Six v. Sweeney*, 2013 WL 1910379, at *4 (N.D. W. Va. May 8, 2013) (denying the plaintiff's motion to remand and holding that the plaintiff's settlement demand of $100,000 "clearly establishes, by a preponderance of the evidence, that the amount in controversy in this case exceeds $75,000").

### 2. The Amount in Controversy is Satisfied Here.

69. In this case, Plaintiff seeks statutory damages, actual damages, punitive damages, credit repair damages, property equity losses, and attorney's fees and costs. *See* Ex. A *generally*.

70. Although RoundPoint contends that Plaintiff's claims are meritless, if Plaintiff were to prevail on his claims, his monetary damages would clearly exceed $75,000.

71. In the Discovery Responses, Plaintiff alleges that he is seeking to recover statutory damages for <u>at least</u> 45 different WVCCPA violations that RoundPoint allegedly committed. *See* Ex. F at p. 10.

72. Plaintiff alleges that 42 of these violations occurred when RoundPoint sent a monthly billing statement to him. *Id*.

73. However, because Plaintiff is now alleging that RoundPoint violated the WVCCPA each time that it sent a monthly billing statement to him, his damages calculation in the Discovery Responses is inconsistent with the averments pled in the Complaint.

74. In the Complaint, Plaintiff alleges that RoundPoint violated W. Va. Code §§§ 46A-2-127(d), 46A-2-127(h), and 46A-2-128 each time that it collected a monthly payment from him. *See* Ex. A at ¶¶47-50.

75. In addition, Plaintiff alleges that RoundPoint violated W. Va. Code §46A-2-127(c) each time that it collected a monthly payment from him following the Tax Sale without notifying him that Delatorre owned Lot 11.

76. As a result, Plaintiff is alleging that RoundPoint committed, at a minimum: 1) 42 alleged violations of W. Va. Code § 46A-2-127(d); 2) 42 alleged violations of W. Va. Code § 46A-2-127(h); 3) 42 alleged violations of W. Va. Code § 46A-2-128; 4) an undisclosed number of violations of W. Va. Code §46A-2-127(c); and 5) the 3 additional violations referenced in the Discovery Responses when RoundPoint sent an escrow analysis to Plaintiff, spoke with him on the telephone, and sent a response to his counsel in March 2022.

77. In addition, Plaintiff's Complaint demands "all damages allowed by law" as a result of RoundPoint's alleged violations of the WVCCPA. *See* Ex. A at ¶51.

78. While the maximum civil penalty allowed by the WVCCPA is $1,000 per violation, "this award may be adjusted to account for inflation since September 1, 2015 based on the consumer price index published by the Department of Labor" in accordance with W. Va. Code § 46A-5-106. *Woodfell v. Gateway Mortgage Group, LLC*, 2020 WL 3964758, at *6 (S.D. W. Va. July 13, 2020).

79. According to the U.S. Bureau of Labor Statistics' inflation calculator (https://www.bls.gov/data/inflation_calculator.htm), $1,000 in September 2015 has the same buying power as $1,290.43 in November 2023.

80. As a result, given the fact that Plaintiff is alleging that RoundPoint violated the WVCCPA on more than 100 separate occasions, the total amount of statutory damages that Plaintiff is seeking to recover is well in excess of $75,000.[3]

81. In addition to the statutory penalties, Plaintiff alleges that he has incurred $3,437.30 in economic damages and unspecified amounts of actual damages, punitive damages, credit repair damages, and emotional distress damages.[4]

82. Moreover, based on the allegations raised in Plaintiff's Complaint and the contentions made by Plaintiff's counsel regarding the amount of time that he has incurred to date and his hourly rate, Plaintiff's attorney's fees and costs (as recoverable under the WVCCPA) will undoubtedly reach tens of thousands of dollars through trial, or at the very least, summary judgment in this action.

---

[3] Once again, RoundPoint is not conceding that these violations exist and is only providing calculations based upon the information provided by Plaintiff in the Discovery Responses and the face of the allegations set forth in the Complaint.

[4] While Plaintiff will likely attempt to minimize the amount of the credit repair damages that he is seeking to recover, the measure of damages is apparently complex enough that it requires the retention of an expert witness. *See* Ex. F at p. 10.

83. Further, it is very likely that the instant litigation will require extensive motion practice (including dispositive motions and responses thereto) and discovery, which will result in significant costs and time expended by Plaintiff and his attorney. Indeed, based upon the allegations in the Complaint, "experience and common sense" dictate that counsel will likely incur significant attorney's fees and costs. *See, e.g. Francis,* 869 F. Supp. 2d at 670.[5]

84. In prior cases involving WVCCPA violations, the Southern District of West Virginia has held that attorneys' fees could reasonably reach up to at least $25,000. *See, e.g., Patton v. Fifth Third Bank*, No. Civ. A. 2:05-0790, 2006 WL 7771924 at *3 (S.D. W.Va. Mar. 24, 2006); *McGraw v. Discover Fin. Servs., Inc.,* No. Civ. A. 2:05-0215, 2005 WL 1785259 at *6 (S.D. W. Va. July 26, 2005); *Stoler*, 2018 WL 6422469, at *3. Accordingly, the Court should infer that *at least* $25,000 in attorneys' fees are to be aggregated with the damages asserted in Plaintiff's Complaint when determining if the amount in controversy is met.

85. Finally, Plaintiff's settlement demand of $100,000 demonstrates that he values his claims at a figure that exceeds $75,000 and can be used as proof that the amount in controversy has been met. *See e.g. Kenney*, *Riggleman*, *Six*.

86. While Plaintiff's counsel contended that "there is no objectively reasonable basis to summarily claim that the value exceeds $75,000" in the Motion to Remand, it is evident that he intentionally underestimated the scope of Plaintiff's potential recovery in an attempt to have this case remanded only to subsequently make a six-figure settlement demand and serve discovery responses indicating that Plaintiff is entitled to recover a significant amount of statutory damages.

87. Therefore, in light of the pleading requirements for removal under controlling law, RoundPoint respectfully submits that it has set forth sufficient information and facts to support a

---

[5] Notably, there are <u>no</u> allegations in the Complaint that Plaintiff's damages are $75,000 or less.

finding that the allegations of Plaintiff's Complaint exceed the $75,000 threshold requirement for diversity jurisdiction.

88. Accordingly, Plaintiff's Complaint may be removed to this Court.

### C. **Removal is Timely**

89. Pursuant to 28 U.S.C. §1446(b)(3), "a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order, or other paper from which it may be ascertained that the case is one which is or has become removable."

90. Courts have consistently held that 28 U.S.C. §1446 permits a party to file a second notice of removal after a prior unsuccessful attempt at removal. *Bowyer v. Countrywide Home Loans Servicing LP*, 2009 WL 2599307, at *2 (S.D. W. Va. Aug. 21, 2009).

91. Courts take an expansive view of the term "other paper" in §1446(b)(3), and "it is evident that Congress intended that nearly any written document generated in the course of litigation and received by the defendant can supply grounds for removal." *Id*. at *3.

92. Examples of documents recognized by courts as "other paper" under §1446(b) are answers to interrogatories. *Id*. (denying plaintiff's motion to remand and permitting defendant to remove a case following a previous unsuccessful removal attempt); *see also Adkins v. Wells Fargo Bank, N.A.*, 2010 WL 1780255, at *4 (S.D. W. Va. May 3, 2010) (finding that there was no dispute that the plaintiff's interrogatory responses constituted "other paper" as that term is used in §1446(b), finding that the defendant's removal was timely, and denying the plaintiff's motion to remand).

93. This Notice of Removal is timely pursuant to 28 U.S.C. §1446(b)(3) because it is being filed within 30 days of December 1, 2023, i.e. the date that RoundPoint received the Discovery Responses.

### D. Other Factors Supporting Removal

94. Removal to Proper Court. This Court is part of the "district and division" embracing the place where the Complaint was filed—Jefferson County, West Virginia—and so this Court is the proper venue for removal. 28 U.S.C. § 1446(a)

95. Copies of State Court Filings. Copies of documents filed with the Jefferson County Circuit Court as well as documents filed with this Court in the Prior Removal Action are collectively attached hereto as **Exhibit G**.

96. Docket Sheet: A copy of the state court's "docket sheet" is attached as **Exhibit H**.

97. Notice of Filing of Notice of Removal. A copy of the Notice of Filing of Notice of Removal, which will be timely filed with the clerk of the state court in which the action is pending and served on Plaintiff's counsel pursuant to 28 U.S.C. § 1446(d), is attached hereto as **Exhibit I**.

98. Signature. This Notice of Removal is signed pursuant to Fed. R. Civ. P. 11. *See* 28 U.S.C. § 1446(a).

99. Based on the foregoing, this Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a), and the claims are properly removed to this Court under 28 U.S.C. §§ 1332, 1441 and 1446.

100. In the event that Plaintiff seeks to remand this case, or that this Court considers remand *sua sponte*, RoundPoint respectfully requests the opportunity to submit such additional argument or evidence in support of removal as may be necessary.

141581.00719/133962835v.1

**WHEREFORE,** Defendant RoundPoint Mortgage Servicing LLC f/k/a RoundPoint Mortgage Servicing Corporation, respectfully requests that this action be removed to the United States District Court for the Northern District of West Virginia.

Respectfully submitted,

*/s/ Kevin M. Eddy*
Kevin M. Eddy
BLANK ROME, LLP
501 Grant Street, Suite 850
Pittsburgh, PA 15219
Tel: (412) 932-2757
KEddy@BlankRome.com
*Counsel for Defendant, RoundPoint Mortgage Servicing LLC f/k/a RoundPoint Mortgage Servicing Corporation*

Dated: January 2, 2024

## CERTIFICATE OF SERVICE

I, Kevin M. Eddy, hereby certify that a true and accurate copy of the foregoing Notice of Removal was served upon the following individual via the Court's ECF system and via electronic mail:

> Stephen G. Skinner
> Skinner Law Firm
> P.O. Box 487
> Charles Town, WV 25414
> *Counsel for Plaintiff*

> */s/ Kevin M. Eddy*
> Kevin M. Eddy

Dated: January 2, 2024

141581.00719/133962835v.1